CURTAIN *et al.* v. TALLEY *et al.*

*(Circuit Court, E. D. Virginia.* June 19, 1891.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—RESERVATIONS.
   Clauses in the assignments of insolvents, requiring releases from creditors accepting dividends, regarded with great disfavor by courts.
2. SAME—ACTION TO SET ASIDE.
   Such an assignment must embrace all the estate of the insolvent, must give full information as to the character and probable value of the assets, and must allow ample time to creditors to determine whether to accept and release or not. Where all the insolvent's estate is conveyed, and the claim of plaintiff is acknowledged fully and exactly, and the plaintiff is left without redress in an action at law, in such case, a bill in equity may be brought to set aside an assignment as hindering, delaying, and defrauding creditors, before judgment is obtained at law, as required in *Scott* v. *Neely*, 11 Sup. Ct. Rep. 712.

*(Syllabus by the Court.)*

In Equity. On a general creditors' bill.

*A. L. Halliday, Wm. Flegenheimer, Saml. Proskauer,* and *Joseph Christian,* for plaintiffs.

*J. Allston Cabell* and *Leigh R. Page*, for defendants.

HUGHES, J.    Ernest H. Chalkley, one of the defendants, and a citizen of Richmond, was engaged in the business there of buying raw hides, tanning them, and selling the leather in other markets.    The deed which is the subject of this controversy was executed by him on the 18th January, 1889.    It conveys to Williamson Talley, of Richmond, as trustee, a tannery in Manchester, Va., opposite Richmond, with all its implements, utensils, and fixtures, supposed to be worth about $3,000; all hides on hand, and leather in process of manufacture, bark, materials, etc., supposed to be worth $10,000; leather stored in the tannery, supposed to be worth $150; debts and accounts due grantor, amounting to $529; a buggy and harness worth about $40; a lot of land in Manchester, supposed to be worth about $6,000; all the right, title, and interest of grantor, whatever it may be, in and to real estate in the city of Richmond, consisting of five lots of land, most of them containing buildings on them; also any interest the grantor may have in the firm of J. T. Stratton & Co., and in the uncollected assets of the late firm of O. H. Chalkley & Co., consisting of uncollected debts of little or no value; and all other property of every kind and description, whether real or personal, and all debts, claims, rights, and securities to which the grantor may be entitled from any source,—but in trust to secure the payment of all the debts of the said Ernest H. Chalkley in the order set forth in the deed. Power is given the trustee to make purchases and continue the business for the purpose of preventing loss or sacrifice of property in course of manufacture, and this power is modified by conferring more or less control over the trustee upon creditors.    These provisions need not be here described.    The debts secured are of three classes; most of those composing the two first classes being specifically scheduled.    The first class consists of debts amounting to about $8,200.    The second class consists of debts amounting to about $42,700, so far as they are enumerated, and also of debts which are not given in detail, but are described as "all the other debts of Ernest H. Chalkley upon which he is bound as surety, and not as principal debtor."    One of the debts enumerated in this class is that of the plaintiff in this suit, which is acknowledged in the exact amount claimed in the bill.    The third class consists generally of debts due to all other creditors, none of which, nor the amounts of them, severally or aggregate, are specified.    After enumerating the two first classes of creditors, and before mentioning the third, the deed contains a clause in these words:

"But this deed is made upon the distinct understanding that no creditor intended to be hereby secured in the above classes shall receive any benefit whatever under it unless he shall, within ninety days from the date of its recordation, signify in writing his acceptance of the provision of this deed, and release the said Ernest H. Chalkley from all further liability for his debt."

The deed has also a concluding clause declaring that—

"It is the intent and meaning of this instrument that each class is paid any part of the sum secured in them; and, if there is not enough assets to pay

any class in full, all of that class shall share equally in any sum applicable to any in that class, and no one in any class shall have priority over any other in the same class."

The bill in this suit charges fraud, and is brought to set aside the deed of assignment as made to hinder, delay, and defraud creditors. In respect to jurisdiction, this case is ruled by *Griffin* v. *Peters*, 133 U. S. 679, 10 Sup. Ct. Rep. 354, and not by *Scott* v. *Neely*, 11 Sup. Ct. Rep. 712; for here the plaintiff's claim is fully acknowledged in debtor's deed, and taken for confessed in the pleadings. Here, also, the debtor, by assigning his whole estate, has left nothing for final process to reach, and has deprived the plaintiff of all redress at law.

I deem it unnecessary to consider the deed from any other point of view than that of the release and prorating clauses last quoted above. It is plain from the provisions of the deed that, if the assets conveyed should prove sufficient to pay off the $8,200 which it mentions as first preferred debts, they will certainly fall short of discharging the $42,700 of debts of the second class, which it enumerates in detail. The almost necessary inference is that less than 50 per cent. and most probably less than 20 per cent. of these debts can be paid; but, be the percentage what it may, the deed requires every one of the second class creditors, within 90 days after its registration, to release his claim against the grantor, as a condition of receiving the percentage which may in the end fall to him. These are the features of the deed of assignment under consideration which raise the question of its validity. Under the well-settled law, it is necessary to the validity of any deed of assignment giving preferences and containing a release clause that the deed shall convey all the estate of the insolvent, and shall give to his creditors all the information in the debtor's power as to the nature and value of the property conveyed, and the amount of the debts provided for; and also a reasonable time to enable creditors to obtain such information as the deed may not afford, in which to make up their minds deliberately and intelligently whether to accept or reject the offer made to them. In the clauses providing for the creditors of the second class, this deed, after enumerating debts amounting to about $42,700, provides, in addition, for "all other debts of Ernest H. Chalkley upon which he is bound as surety, and not as principal debtor;" but gives no schedule of such suretyships, nor any particulars whatever of their amounts or dates, or the persons indorsed for. In the granting clause of the deed the grantor's interest in several pieces of real estate in Richmond is assigned, but the value of the property is not stated even approximately, and the interest of the grantor in it is not indicated in any manner, but, on the contrary, the most indefinite phrase that could be framed is used, the interest being described as "whatever it may be." If it be pretended that the clauses referring to this real estate are sufficient to put creditors on inquiry as to what Chalkley's interest in it really is, inquiry develops that it has required a chancery suit, not likely to be concluded for a year or more, to be instituted, to determine what that interest is. As to the property held by Chalkley in his own right, it was of a character to render it im-

practicable for creditors to arrive at any approximate estimate of its selling price within 90 days of the registration of the deed. This property consisted of a tannery and of hides in process of being tanned; the latter requiring expense and time to be incurred by the trustee in maturing them into salable condition. Tanneries are salable to but a small class of purchasers, most of whom live in different and distant localities. This circumstance made any judicious sale of the tanning establishment of E. H. Chalkley impracticable within a period as brief as 90 days from the registration of his deed.

Other provisions of this assignment contravening the conditions which the courts hold to be essential to the validity of assignments requiring releases from creditors might be pointed out, but I have stated enough to show that this deed does not give to creditors all the information which it was in the power of its grantor to give, and which it was his duty to give, as to the value of the property conveyed, as to his interest in it, and as to the amount of his indebtedness. On the contrary, it is exceptionally at fault in each of these particulars, and that to a degree which rendered it wholly impossible for any creditor to decide intelligently whether to accept its terms or not within any reasonable time after the deed went upon record, certainly within the 90 days prescribed by the deed. The Virginia court of appeals have had but very few cases of deeds of assignment by insolvents containing release clauses to deal with, and we do not find as full an adjudication of the subject in its decisions as would be desirable, and as the courts of other states have made. Turning, therefore, to the general law of the subject, it may be stated generally that assignments exacting releases from creditors are looked upon with great disfavor by the courts. These provisions are attempts on the part of the debtor to coerce his creditors to accede to his terms, and a withholding of his property from them unless they do accede.

It is to be observed that a debtor by a release clause affects to do what a sovereign state of this Union is forbidden by the national constitution to authorize. He affects to institute a proceeding in bankruptcy on an individual scale, by which he may individually be discharged from his obligations, by his own individual authority. Such a proceeding cannot command much favor in the courts. Of course they all hold that if a debtor, with his property still open to the legal pursuit of his creditors, can satisfy them that it is for their interest to accept a compromise, and give him an absolute discharge on his assigning his estate to them, he may do so. But the case is different when the debtor first assigns his whole estate away, putting it beyond the reach of legal process, and then proposes to his creditors, in the form of a release clause, terms of accommodation. He thereby obstructs their legal remedies, and hinders and delays them in the prosecution of suits against him. Naturally, therefore, the courts look upon such provisions with great disfavor. It is true they will uphold deeds containing such clauses, if the circumstances are such as to preclude the imputation of intentional fraud, and if the utmost candor and fairness are used towards creditors; but they

will not uphold them if this candor and fairness are wanting. If creditors are not afforded all the information necessary to an intelligent decision on the expediency of a full release to the debtor, and if ample time and opportunity for making up a decision be not given, then this delinquency is itself a badge of fraud; and, when it is as palpable and manifest as in this case, the deed ought to be set aside.

I will decree accordingly.